Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
Juliana G. Blaha (SBN 331066)
Juliana@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343
F: 866-219-8344

Daniel G. Shay (SBN 250548)
DanielShay@TCPAFDCPA.com
**LAW OFFICE OF DANIEL G. SHAY**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429
F: 866-431-3292

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA PAYTON,<br><br>    Plaintiff,<br><br>vs.<br><br><br>BANK OF AMERICA, N.A.,<br><br>    Defendant. | Case No: **'21 CV0644 BEN DEB**<br><br>COMPLAINT FOR VIOLATIONS OF:<br><br>1.  Electronic Funds Transfer Act<br>2.  California Consumer Privacy Act<br>3.  California Unfair Competition Law<br>4.  Negligence<br>5.  Breach of Implied Duty to Perform with Reasonable Care<br>6.  Strict Liability, Design Defect, Risk Benefit Test<br>7.  Negligent Failure to Warn<br>8.  Breach of Contract<br>9.  Breach of Implied Contract<br>10. Breach of the Implied Covenant of Good Faith and Fair Dealing<br>11. Breach of Contract, Third-Party Beneficiaries |

1.  Plaintiff Laura Payton ("Ms. Payton" or "Plaintiff") alleges the following facts and claims against Bank of America, N.A. ("Bank of America" or "Defendant"), regarding its management of California unemployment insurance and other benefits. The allegations pertaining to Ms. Payton arise from her personal knowledge, and preliminary investigation of her counsel. Plaintiff, and Plaintiff's counsel believe that Bank of America has sole control over numerous relevant documents and evidence that will corroborate allegations by Plaintiff after the discovery phase.

## INTRODUCTION

2.  California's Employment Development Department ("EDD") executed an exclusive contract with Bank of America to manage, administer and distribute billions of dollars in unemployment insurance and other benefits to unemployed Californians. COVID-19 has hit California particularly hard with over 3.5 million confirmed cases[1] as of March 13, 2021. This confirmed total is over 1 million higher than Texas, the second highest state in America affected by COVID-19 with approximately 2.3 million confirmed cases[2] as of March 14, 2021. Because of this unprecedented pandemic, California's unemployment rate rose 15 percent in April 2020[3]. Those in dire need of unemployment benefits, many like Plaintiff that struggled desperately to find work, were then confronted with another seemingly insurmountable obstacle manufactured by Bank of America. Bank of America made it nearly impossible for those in need of benefits to receive their much-needed aid. Bank of America's decision to not include the heightened security measures on the EDD debit cards, which other Bank of America debit cards have employed

---

[1] COVID CA: www.Covid19.ca.gov/state-dashboard/
[2] Texas Health and Human Services:
www.txdshs.maps.arcgis.com/apps/opsdashboard/index.html#/ed483ecd702b4298ab01e8b9cafc8b83
[3] Employment Development Department State of California: https://www.edd.ca.gov/newsroom/unemployment-may-2020.htm

Complaint

as standard, allowed criminals to funnel, illegally, billions of dollars[4] out of unemployed Californians like Plaintiff. Thousands of Californians, like the Plaintiff, were faced with pennies left in their Bank of America EDD prepaid debit card accounts after numerous fraudulent charges were made all over America and the world by thieves who penetrated Bank of America's systems.

3.   Many like Plaintiff woke up to find hundreds of dollars missing from their accounts.:

> "Everything was fine, and then on August 22, I checked the balance on my card, and it said a cash withdrawal in the amount of $1,000.00 had been made."
>
> – EDD cardholder victim [5]

4.   To compound issues Bank of America froze Plaintiff's account without notice, locking her out from being able to access her desperately needed aid for months. Bank of America's Terms and Conditions in the California Employment Development Department Debit Card Account Agreement state that EDD card holders will receive funds on the day EDD has funded the recipients account[6], and only through notice may Bank of America take such actions as "freezing" an account.[7] However, this was not the case for many EDD card holders including Plaintiff. No notice was given prior to Bank of America freezing Plaintiff's account.

5.   Additionally, Bank of America touts its "Zero Liability" policy for unauthorized transactions as a protection for EDD card holders.

///

///

---

[4] Cal Matters: https://calmatters.org/economy/2021/01/bank-of-america-lost-hundreds-of-millions-on-california-unemployment-fiasco/
[5] ABC News: https://abc7.com/bank-of-america-edd-empty-accounts-fraud-cases-california-unemployment/8424745/
[6] Bank of America, Terms and Conditions; California Employment Development Department Debit Card Account Agreement; section 2.
[7] Id.

Complaint

> "Under the Bank of America "zero liability" policy, you may incur no liability for unauthorized use of your Card up to the amount of the unauthorized transaction, provided you notify us within a reasonable time of the loss . . ."

– Bank of America's Terms and Conditions[8]

6. The EDD card holder's reality of attempting to recoup their fraudulently lost funds back into their accounts was an entirely different situation including for Plaintiff. Under Bank of America's own policy with EDD card holders Bank of America agreed that no more than ten (10) days would pass in determining if an error occurred with an EDD account. Moreover, Bank of America would promptly correct any such error.[9] In the event that more time is needed to investigate a grave error, Bank of America may take up to 45 days to investigate complaints or questions.[10] In this occasion Bank of America acknowledges that EDD card holders will need access to their necessary EDD benefits, and Bank of America would credit accounts so EDD card holders would have access to their funds.[11] In theory Bank of America's terms and conditions would provide EDD card holders with a means to survive during events like the rampant fraud that occurred to countless EDD card holders. However, Bank of America did not follow that procedure. Many EDD card holders were left homeless, jobless, and penniless because Bank of America chose to not adhere to its own "Zero Liability" to the consumer policy. Instead, Bank of America created its own "Zero Liability" to Bank of America policy.

7. Compounding an almost futile situation, EDD card holders such as Plaintiff were left without recourse or a timeline as to when the situation would be rectified. EDD card holders were put on hold for countless hours and made to jump through

---

[8] Id. at section 9.
[9] Bank of America, Terms and Conditions; California Employment Development Department Debit Card Account Agreement; section 11.
[10] Id.
[11] Id.

4

Complaint

exhausting hoops in efforts to reacquire lost benefits. EDD card holders are desperately relying on their unemployment benefits, the hundreds of dollars a week allows EDD card holders to survive. Albeit EDD card holders' individual benefits are insignificant in comparison to Bank of America's merchant fee profits in their exclusive contract with EDD[12], the money the EDD card holders are entitled to weekly is all the money they have to survive.

> "It's not a big amount of money but it's money that we all need right now. I shouldn't have to be going through all these hoops to deal with that one, it's their responsibility that my account is safe."
>
> – EDD cardholder victim[13]

8.    Preventable is a common word many EDD card holders such as Plaintiff are coming across when researching this horrendous situation. When EDD card holders learn that hundreds of thousands of other EDD benefit accounts were frequently accessed, all eyes shift to Bank of America's choice to not employ EMV[14] chips on EDD cards it issued so that the cards would be EMV compliant.[15] Bank of America's conscious choice to issue hundreds of thousands of EDD benefit recipients' cards that were not EMV compliant directly negatively impacted thousands of Californians including Plaintiff. Bank of America's choice to issue EDD cards with antiquated technology detrimentally affected thousands of EDD card holders that desperately needed aid.

> "EDD cards make stealing your information especially easy, because unlike regular debit cards, they [EDD cards] don't have a chip . . . By having a chip [EMV], you have your information that's on the card encrypted in the chip and it makes it more difficult to duplicate the cards . . . Whereas the magnetic strip, that's 30- to 40-year-old

---

[12] Cal Matters: https://calmatters.org/california-divide/2021/02/how-edd-and-bank-of-america-make-millions-on-california-unemployment/
[13] CBS News: https://sanfrancisco.cbslocal.com/2020/12/22/victims-of-bank-of-america-edd-debit-card-fraud-tell-stories-of-closed-claims-frustration-loss/
[14] EMV stands for Europay, Mastercard, and Visa.
[15] "EMV compliance" is a global payment technology standard established by cardmember associations like Mastercard and Visa designed to protect customers from fraud.

Complaint

technology."

– Steve Morang certified fraud examiner [16]

9.   Many EDD card holders are demanding answers from Bank of America. Why was this antiquated technology used on them, but not regular Bank of America debit card holders?

10.  Bank of America's failure to protect Plaintiff and other EDD card holders' private information from fraud and failure to resolve EDD card holder disputes in accordance with applicable rules, regulations, and agreements in a timely manner with adequate clear and consistent communication has violated numerous laws. Bank of America has breached its contractual obligations with Plaintiff, other EDD card holders and the State of California. These actions by Bank of America caused direct harm to Californian citizens who were entitled to received EDD benefits. The benefits were meant to bridge the gap from homelessness and starvation to shelter and food on the table for their families during the global pandemic.

## JURISDICTION AND VENUE

11.  Jurisdiction of this Court arises pursuant to: (i) 28 U.S.C. § 1331 with respect to causes of action arising out of the Federal Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq, additionally 28 U.S.C. § 1367 with respect to causes of action arising out of state law; and (ii) U.S.C. §1332(a) because Plaintiff is a citizen of California, Defendant, Bank of America, is incorporated under the state laws of Delaware, and has its principal place of business in North Carolina, and the amount in controversy exceeds $75,000

12.  Because Defendant, Bank of America, has purposely availed itself in California and afforded itself to the protection and benefits of the State of California law, has sufficient minimum contacts with the State of California, and has a substantial

---

[16] Steve Morang: certified fraud examiner with San Francisco-based accounting firm, *Frank, Rimerman and Company.* Citing: CBS SF Bay Area: https://sanfrancisco.cbslocal.com/2020/10/29/fraudulent-charges-appearing-on-bank-of-america-edd-debit-cards-350000-unemployed-californians/

Complaint

portion of its business with the State of California, this Court has personal jurisdiction over Bank of America.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendant conducted business within this judicial district at all times relevant.

## **PARTIES**

14. Plaintiff is a person residing in San Diego County, California. Plaintiff found herself out of work during, and unable to secure employment because of the COVID-19 pandemic. Plaintiff applied for and received EDD unemployment benefits in March 2020; soon thereafter, she received a Bank of America EDD debit card with a magnetic stripe (no EMV chip) to access Plaintiff's benefits; shortly thereafter Plaintiff was the victim of unauthorized transactions on her card; and despite its "Zero Liability" policy, and Plaintiff's repeated requests for help, Bank of America has been either unwilling or unable to return the funds fraudulently taken from Plaintiff's account, nor remove the "Administrative Hold" on Plaintiff's EDD account.

15. Bank of America is a national bank with its principal place of business in North Carolina. As one of America's largest banking institutions, Bank of America was awarded the State of California's EDD benefit distribution contract and is the sole distributor of the State of California's EDD benefits. Bank of America does a significant amount of business in California with 460 branches in the state.[17]

///

///

///

///

---

[17] Go Banking Rate: *Bank of America Near Me:* https://www.gobankingrates.com/banking/banks/bank-america-bank-near/

Complaint

# FACTUAL ALLEGATIONS

## Bank of America's Exclusive Contract with EDD

## and Implementation of Antiquated Technology in EDD Debit Cards

16. California's EDD issues benefit payments for Disability Insurance, Paid Family Leave, and Unemployment Insurance Claims using the EDD Visa Debit Card including to Plaintiff.[18]

17. The State of California stated that EDD benefit card holders will receive fraud protection from Bank of America's "Zero Liability" policy.[19]

18. In 2010, Bank of America and EDD entered an exclusive contract to have Bank of America distribute all of California's EDD's unemployment benefits to recipients through debit cards.[20]

19. Bank of America claims that EMV chip is the credit and debit card security standard in many countries around the world.[21] Additionally, Bank of America claims that when purchases are made using the chip feature at chip-enabled terminals, the transaction is more secure, and this makes the card more difficult to counterfeit or copy.[22] Bank of America believes EMV chip technology is the next step in providing enhanced security to card holders.[23]

20. Yet, Bank of America intentionally issued thousands of California EDD benefit card holders debit cards without EMV chip technology including to Plaintiff. Bank of America states that all Bank of America card holders, regardless of EMV chips or just magnetic stripes, should have confidence in the protections and security features Bank of America provides for all credit and debit card accounts.[24]

---

[18] State of California EDD: https://edd.ca.gov/about_edd/The_EDD_Debit_Card.htm
[19] Id.
[20] North Coast Journal of Politics, People & Art: How EDD, Bank of America Make Millions on California Unemployment: https://www.northcoastjournal.com/NewsBlog/archives/2021/02/06/how-edd-bank-of-america-make-millions-on-california-unemployment
[21] Bank of America, Chip Card FAQs: https://www.bankofamerica.com/security-center/faq/emv-chip-card/
[22] Bank of America, Chip Card FAQs: https://www.bankofamerica.com/security-center/faq/emv-chip-card/
[23] Id.
[24] Id.

8

21. Even though, Bank of America has sole control over the funds in EDD accounts once EDD deposits fund,[25] thousands of EDD accounts, including Plaintiff's, fell victim to fraudulent transactions because of Bank of America's use of antiquated technology i.e., the magnetic strip. Bank of America markets itself as an industry leader in security and anti-theft, though, through its direct actions it has impacted thousands of EDD card holders who desperately needed their aid to stay afloat.

**Bank of America's Permeable Security Protocols Failed to Protect EDD Accounts Holders Personal and Private Information**

22. Bank of America failed to properly secure EDD account holder's information including Plaintiff's and these actions directly caused Plaintiff's and other EDD account holders' private and personal information to be accessed by non-authorized third parties. These breaches could only have occurred through negligent management of EDD account holder's information.

23. Thousands of EDD card holders account information, including Plaintiff's, were fraudulently accessed because of Bank of America's inadequate security measures. A direct result of the inadequate security measures was that Plaintiff's and many other EDD card holders' money was accessed illegally. Many of these fraudulent activities took place prior to EDD card holders physically obtaining their EDD debit cards from Bank of America. It is alleged that this information could have only been accessed if Bank of America did not properly install the proper safeguards to prevent such fraudulent activity.

24. Bank of America claims that it has multiple layers of security protection in place to protect clients, customers, employees and our company, and that Bank of America's policies, procedures and protections are always evolving to stay ahead of new strategies used by fraudsters.[26] However, in this exact instance, Bank of

---

[25] Bank of America, Terms and Conditions; California Employment Development Department Debit Card Account Agreement; section 2.
[26] Bank of America, Fraud Prevention FAQs: https://www.bankofamerica.com/security-center/faq/data-compromise/

Complaint

America actions were not cutting edge to protect thousands of EDD account from data breaches.

**Bank of America's Lack of Customer Service Leaves Customers Totally Liable**

25. Bank of America alleges that EDD account holders will have "Zero Liability" for unauthorized transactions made on EDD accounts.[27] Bank of America further defines EDD card holder's liability, or lack thereof for unauthorized transactions, whereas EDD card holders under Bank of America "zero liability" policy, one may incur no liability for unauthorized use of an EDD Card up to the amount of the unauthorized transaction, provided that the card holder notifies Bank of America within a reasonable time of the unauthorized use.[28]

26. As discussed above Bank of America, under Bank of America's own policy with EDD card holders, agreed that no more than ten (10) days will pass in determining if an error occurred with an EDD account. Moreover, Bank of America will promptly correct any such error.[29] In the event that more time is needed to investigate a grave error, Bank of America may take up to 45 days to investigate complaints or questions.[30]

27. Additionally, Bank of America outlines that EDD card holders should contact Bank of America at once if card holders believe their card has been lost or stolen, or if they believe that someone will use or has used their PIN assigned to their Card without permission.[31]

28. Additionally, if an EDD account holder's monthly account statement or their account history showed transfers that the account holder did not make, including

---

[27] Bank of America, Terms and Conditions; California Employment Development Department Debit Card Account Agreement; section 9
[28] Id.
[29] Bank of America, Terms and Conditions; California Employment Development Department Debit Card Account Agreement; section 11.
[30] Bank of America, Terms and Conditions; California Employment Development Department Debit Card Account Agreement; section 9.
[31] Bank of America, Terms and Conditions; California Employment Development Department Debit Card Account Agreement; section 10.

Complaint

those made with their EDD Card, Card number, PIN or other means, that EDD card holder should alert Bank of America within 60 days to recover the money.[32]

29. But contacting Bank of America presented steep hurdles for Plaintiff and other EDD cardholders because the 1.866.692.9374 telephone number given to EDD card holders had extremely excessive wait times, and frequently hung up on EDD card holders after an automated message informed the caller "not able to take calls at this time, try again later." If EDD card holders did reach a Bank of America representative they were given incomplete information, and no definitive answer as to when access to their funds would occur, which is what happened to Plaintiff.

30. Bank of America promises that EDD card holders will have access to their disputed funds after 10 days from the dispute; however, in reality EDD card holders like Plaintiff went months without communication as to when they would have access to their money.

### Bank of America's Breach of Duty to Plaintiff and
### Thousands of EDD Debit Card Holders and Lack of Transparency

31. Bank of America's decision to provide EDD cardholders with debit cards without EVM chips was a costly one for EDD benefit recipients like Plaintiff.  Billions of dollars have been stolen from California's EDD card holders like Plaintiff, accounts have been frozen and or locked out because of Bank of America's decisions. As of January 27, 2021, there were 450,000 unemployment debit cards that remained frozen.[33] In the worst unemployment crisis in California's history, during an unprecedented pandemic, Bank of America left Plaintiff and hundreds of thousands of EDD benefit recipients stranded.

32. In March of 2020, Plaintiff began receiving EDD benefits when she needed funds to bridge the gap between employment during the pandemic.

---

[32] Id.

[33] LAist: Bank of America says it lost hundreds of millions on California's unemployment fiasco: https://laist.com/2021/01/27/bank_of_america_says_it_lost_hundreds_of_millions_on_californias_unemployment_fiasco.php

33. On November 16, 2020, Plaintiff received a payment of unemployment funds. Plaintiff transferred $200 to Plaintiff's Wells Fargo account, leaving $683 in Plaintiff's Bank of America account.

34. On the same day, when Plaintiff attempted to withdraw the remaining balance of Plaintiff's Bank of America account from an ATM, the ATM showed that the account had zero funds.

## Bank of America's Lack of Transparency

35. Immediately after noticing fraudulent activity on her Bank of America account, Plaintiff began her tireless quest to recover her money from Bank of America. Plaintiff promptly called Bank of America and notified them about the fraudulent activity. Plaintiff was transferred to the claims department and was put on hold for hours and never connected with a person.

36. The next day, November 17, 2020, Plaintiff continued to attempt to file a fraud claim with Bank of America over the phone.  Plaintiff was met with seemingly endless wait times, spanning anywhere from two to five hours, only to have Bank of America unceremoniously hang up on Plaintiff several times. After spending hours on the phone, Plaintiff was able to open a claim with Bank of America.

37. Bank of America informed Plaintiff that a balance inquiry was made on her account and her funds were withdrawn from the ATM in Chula Vista. Plaintiff informed Bank of America that these activities did not correspond to Plaintiff's normal activities, because Plaintiff never made this type of inquiry and Plaintiff does not live in Chula Vista.

38. Plaintiff persistently contacted Bank of America along with EDD and spent many hours on the phone attempting to have her benefits restored. However, Bank of America did not issue any sort of refund or credit for the funds it allowed to be stolen from Plaintiff.

///

///

Complaint

39. Plaintiff faced further difficulties from Bank of America in her attempt to recover her money. Bank of America repeatedly told Plaintiff that it would not proceed with her claim until her ID had been verified with EDD.

40. However, when contacting EDD, Plaintiff was told that Plaintiff's ID had already been verified. Bank of America continued to deny that Plaintiff's ID had been verified, delaying Plaintiff's ability to regain her benefits.

41. Prior to November 30, 2020, Plaintiff was able to obtain a new card from Bank of America to receive her EDD benefits.

42. On November 30, 2020, Plaintiff received a EDD payment on the new card.

43. In December 2020, Plaintiff received another EDD payment on the new card.

44. Following the December payment, Bank of America froze her EDD account without notice.  Bank of America froze the funds in the account and Plaintiff's future EDD deposits and prevented Plaintiff from accessing her desperately needed money for almost three months.

45. Bank of America has not reasonable method to identify and prevent fraud.  It froze Plaintiff's account and provided no notice, reason, or justification to Plaintiff.

46. Bank of America's draconian method of dealing with this alleged "fraud" was to totally freeze Plaintiff's account without giving any sort of credit Plaintiff could use to buy food.

47. Plaintiff was again forced to repeatedly contact Bank of America to recover her benefits.

48. When Plaintiff contacted Bank of America, Bank of America explained that Plaintiff's account was frozen due to fraudulent activity.

49. Plaintiff informed Bank of America that the fraud occurred on Plaintiff's previous card in November and asked Bank of America to unfreeze the card.

50. Bank of America refused to unfreeze Plaintiff's account and instead, put the fault and responsibility of the freeze on EDD, who do not have control over Bank of America's debit cards. Plaintiff had to re-start her exhausting pursuit of recovering

her money from Bank of America, contacting Bank of American and EDD, back and forth, in order to have her ID verified and her account unfrozen spending hours and hours on the phone.

51. On February 1, 2021, Bank of American mailed Plaintiff a letter informing Plaintiff that a freeze was placed on Plaintiff's account.

52. Due to this, Plaintiff was unaware when Plaintiff would be able to receive her seriously needed EDD benefits and was forced to cover her expenses in alternative ways (borrowing money from family, selling her car, etc.).

53. Later, Plaintiff was transitioned from electronic deposits to paper checks for EDD benefits.

54. This further complicated Plaintiff's situation as she now receives her benefits weeks later than expected, harming her ability to cover her expenses even more – all because Bank of America could not perform its obligations.

55. On March 18, 2021, Bank of America mailed Plaintiff another letter, this time informing that they changed their process affecting account where they placed the freeze and that they could work with Plaintiff through a phone call to see if they could release the hold on Plaintiff's card.

56. Plaintiff once again was forced to repeatedly contact Bank of America to unfreeze her account and recover her benefits.  Again, Plaintiff had to spend hours of her day trying to contact Bank of America.

57. To Bank of America, $683.00 might seem insignificant; however, for Plaintiff that money was helping her pay rent, put food on the table, and stay afloat through the pandemic.

58. Plaintiff followed the instructions on Bank of America's account agreement, and made consistent, diligent efforts to recover the funds stolen from Plaintiff's account by making multiple telephone calls. Despite this, Bank of America's customer service department offered Plaintiff no meaningful response or assistance for almost four months, and indeed has stymied Plaintiff's efforts at nearly every turn.

14

59.  In addition, at no point did Plaintiff receive communication via mail, email, text, or otherwise from Bank of America regarding the ongoing widespread fraud affecting EDD debit cards or how defrauded EDD recipients should proceed, even after Bank of America had frozen hundreds of thousands of EDD accounts in a desperate and heavy-handed effort to stem the effects of the fraud. The only option presented to individuals like Plaintiff has been to follow Bank of America's instructions to call the number on the debit card in reliance on its representations of a "Zero Liability" policy and "24/7" customer service. Unfortunately, as Plaintiff has learned, Bank of America's representations are false. Proceeding in accordance with Bank of America's policies and recommendations offers scant hope of recovering lost funds timely.

60.  Per Bank of America's "Zero Liability" policy Plaintiff should have been able to access Plaintiff's funds after ten (10) days, even if there was an investigation that Bank of America deemed necessary. But that was not the reality for Plaintiff, he was left without recourse or other options. Plaintiff was held hostage by Bank of America with the only option of calling and being placed on hold repeatedly.

61.  Plaintiff was the victim of fraud resulting from Bank of America's lax security measures implemented to save money.  Plaintiff followed all of Bank of America's designated procedures while attempting to recover stolen funds.  Plaintiff cooperated with Bank of America by adhering to all its requests it said would allow Plaintiff to recover the money.  Did it take ten days as promised?  No, it took over four months.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

### COUNT I

### VIOLATIONS OF THE ELECTRONIC FUNDS TRANSFER ACT

### 15 U. S. C. § 1693, ET SEQ.; 12 C.F.R. § 1005.1 ET SEQ.

67.  Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

68. The foregoing acts and omissions Bank of America constituted numerous and multiple violations of the Electronic Funds Transfer Act.

69. Plaintiff brings this cause of action under the United States Electronic Funds Transfer Act ("EFTA") and 12 C.F.R. §§ 1005.1-1005.20, Regulation E of the EFTA.

70. Plaintiff promptly notified Bank of America within 60 days after receiving a periodic statement from Bank of America reflecting an unauthorized transaction as defined under 12 C.F.R. § 1005.11(b)(1)(i) (which is an "error" under Regulation E), forcing Bank of America to enact the error resolution requirements of 12 C.F.R. § 1005.11. Specifically, Plaintiff immediately called Bank of America after learning of the errors on Plaintiff's account, which was the same day during Bank of America's regular business.

71. EFTA entitles consumers treble damages if a financial institution, after conducting an erroneous transfer of funds, fails to recredit the consumer's account within ten (10) days of notice of this error. 15 U.S.C. § 1693f(e). The term "electronic fund transfer," however, has a limited meaning under EFTA.

72. "Electronic Fund Transfers" as defined by EFTA means any transfer of funds, other than originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machines transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone.

73. Plaintiff's protected rights under Regulation E, 12 C.F.R. § 1005.11 were violated by Bank of America, because Bank of America failed to provide a provisional credit to Plaintiff's account while further investigations pertaining to Plaintiff's account could not be resolved within ten (10) business days.

///

Complaint

74. Under 15 U.S.C. § 1693f(e)(1)(A) Bank of America violated Regulation E by failing to provisionally credit Plaintiff's account within ten (10) days and did not make a good faith investigation of the alleged error reported by Plaintiff. Specifically, Bank of America failed to provide Plaintiff adequate information about her account status, complete or resolute customer service from which Plaintiff could resolve the error on her account or a timeline as to when her account would be fixed and or unfrozen. Due to the aforementioned reasons EFTA entitles Plaintiff to treble damages under 15 U.S.C. § 1693f(e).

75. Under 15 U.S.C. § 1693f(e)(1)(B) Bank of America violated Regulation E by failing to provisionally credit Plaintiff's account within ten (10) days and did not have a reasonable basis for believing that the consumer's account was not in error. Specifically, Bank of America had Plaintiff and other EDD card holders alike call and investigate their account status with Bank of America over the phone. Plaintiff and EDD card holders were given zero explanation as to who made the rampant fraudulent transactions on their accounts. Nor did Bank of America's multiple layers of security protection, and procedures that were in place to protect clients, and customers facilitate accurate and/or complete investigations that would give Bank of America any indication as to who was defrauding Bank of America. Because Bank of America did not have any indication as to who was behind the widespread fraudulent transactions, they also did not have a reasonable basis for believing it was the individual EDD account holder. Even if Bank of America did claim they did have some inclination of fraud by Plaintiff and/or EDD card holders they did not articulate that inclination to EDD card holders, which demonstrates that Bank of America's lack of evidentiary support to substantiate a reasonable belief that Plaintiff's or EDD card holders accounts were not in error. Due to the aforementioned reasons EFTA entitles Plaintiff to treble damages under 15 U.S.C. § 1693f(e).

///

Complaint

76. Under 15 U.S.C. § 1693f(e)(2)(A) Bank of America knowingly and willfully concluded that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to Bank of America at the time of its investigation.  Specifically, as articulated above, Bank of America did not furnish any documents or other evidentiary support that would concretely conclude that Plaintiff was not in error. Bank of America just withheld funds and froze Plaintiff's account without furnishing any proof why it was frozen, or when the investigation would be over. Because there was no evidence to support such a conclusion by Bank of America, they have knowingly, and willfully concluded Plaintiff's account was not in error when such a conclusion could not have been reasonably been made. Due to the aforementioned reasons EFTA entitles Plaintiff to treble damages under 15 U.S.C. § 1693f(e).

77. Under 12 C.F.R. § 1005.6 *et. seq.* Plaintiff may be held liable for unauthorized electronic fund transfers involving the Plaintiff's account provided that Bank of America follow the 12 C.F.R. § 1005.6(b) limitations on the amount of liability.

78. 12 C.F.R. § 1005.6(b) limits Plaintiff's liability for an unauthorized electronic fund transfer or series of related unauthorized transfers in two different ways; timely notice given, and timely notice not given.

79. Plaintiff did give Bank of America timely notice as defined by 12 C.F.R. § 1005.6(b)(1), because Plaintiff notified Bank of America within two business days after learning of the loss to her account on her Bank of America EDD debit card statement. Because of this timely notice to Bank of America, Plaintiff's liability should not exceed the lesser of $50.00 or the amount of unauthorized transfers that occurred before notice to Bank of America. Bank of America by withholding Plaintiff's funds exceeded this liability cap.

80. 12 C.F.R. § 1005.6(b)(2) covers if Plaintiff did not give Bank of America timely notice within two business days after learning of the loss or theft, and in this event Plaintiff's liability should not exceed the lesser of $500.00 or the sum of: (i) $50 or

18

the amount of unauthorized transfers that occur within the two business days, whichever is less; and (ii) the amount of unauthorized transfers that occur after the close of two business days and before notice to the institution, provided the institution establishes that these transfers would not have occurred had the consumer notified the institution within that two-day period.

81. Presently, Plaintiff did Bank of America within two days of the error; however, in the rare chance that Plaintiff could be seen as to not have notified Bank of America of the fraudulent transactions within the two-day window, Plaintiff's liability would be capped at $500.00 total. Since Bank of America froze Plaintiff's account and withheld hundreds of dollars from plaintiff, they have violated 12 C.F.R. § 1005.6(b)(2) through not limiting her liability to $500.00.

82. Bank of America violations under the Regulation E were the direct and proximate cause of Plaintiff's loss of money.

83. As a result of each and every violation of the EFTA by Bank of America, Plaintiff is entitled to actual damages; treble damages pursuant to 15 U.S.C. § 1693f(e); restitution relief of all EDD funds deposited into Plaintiff's account that were either withheld, frozen withdrawn or fraudulently taken by Bank of America or through Bank of America's actions; statutory damages; consequential damages; incidental damages; and injunctive relief prohibiting Bank of America from freezing Plaintiff's EDD funds.

## COUNT II

### VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT

### CAL. CIV. CODE § 1798.100 *ET SEQ.*

84. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

85. The foregoing acts and omissions Bank of America constituted numerous and multiple violations of the California Consumer Privacy Act ("CCPA").

///

Complaint

86. In 2018, California legislature enacted the CCPA, Civ. Code § 1798.100,[34] which went into effect January 1, 2020, in response to a growing number of concerns regarding the protection of consumers' personal information from collection, use, or sale by businesses with consumer's notice.

87. Plaintiff is a "consumer" under Cal. Civ. Code § 1798.140(g).

88. Defendant is a "business" under Cal. Civ. Code § 1798.140(c)(1)(A).

89. "Personal information" is defined under Cal. Civ. Code § 1798.81.5(d)(1)(A), as an individual's first name or first initial and the individual's last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted: social security number; driver's license number; California identification card number; tax identification number; passport number; military number; or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; Medical information; health insurance information; or unique biometric data generated from measurement or technical analysis of human body characteristics, such as fingerprint, retina or iris image, used to authenticate a specific individual.

90. Bank of America collected, stored and/or transmitted Plaintiff's "personal information" in an unsecure manner that caused Plaintiff's "personal information" to be accessed by other individuals who did not have explicit permission from Plaintiff access referenced "personal information."

91. Cal. Civ. Code § 1798.81.5(b) Bank of America who owns, licenses, or maintains personal information about Plaintiff to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure.

///

---

[34] California Consumer Privacy Act of 2018, c. 545 (A.B. 375) Stats. 2018., codified at Civ. Code § 1798.100 (CCPA). The CCPA added Title 1.81.5 to Part 4 of the Division 3 of the Civil Code, relating to privacy.

Complaint

92. Bank of America violated Plaintiff's rights under Cal. Civ. Code § 1798.81.5(b), because Bank of America elected to use antiquated technology, namely cheaper magnetic stripe technology on EDD cards rather than cards with EMV chip technology implemented on them.

93. Bank of America violations under the CCPA, Civ. Code § 1798.100 were the direct and proximate cause of Plaintiff's personal information to be accessed by individuals who did not have authorization from Plaintiff. Which specifically caused fraudulent transactions and personal information to be disclosed to unauthorized persons that caused economic and non-economic harm to Plaintiff.

94. As a result of each and every violation of the CCPA under Cal. Civ. Code § 1798.150(a) by Bank of America, Plaintiff is entitled to actual damages; statutory damages; consequential damages; incidental damages; and injunctive relief.

### COUNT III

### BANK OF AMERICA'S VIOLATIONS OF

### CALIFORNIA'S UNFAIR COMPETITION LAW

95. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

96. The foregoing acts and omissions Bank of America constituted numerous and multiple violations of the California's Unfair Competition Law ("UCL") Cal. Bus. & Prof Code § 17200 *et seq.*

97. UCL defines violations as conduct that is: unlawful; unfair or fraudulent business act or practice and unfair; deceptive; or untrue or misleading advertising.

98. Bank of America committed fraudulent acts against Plaintiff when they promised, contractually, that Plaintiff would have access to her account provisionally after ten (10) days of a dispute. Bank of America additionally fraudulently represented that Plaintiff would have "Zero Liability" for any unauthorized transactions connected to her account. Moreover, Bank of America acted fraudulently because they induced

Complaint

Plaintiff to believe that she would have access to her money on numerous occasions, only to have her account frozen without notice.

99. Bank of America's actions are unlawful because they have violated both the EFTA and CCPA. Bank of America has unlawfully withheld Plaintiff's money in her EDD account, transmitted her personal information in an unsecure fashion.

100. Bank of America's actions are unfair because Plaintiff had zero other options afforded to her to receive her benefits outside of her Bank of America EDD Debit Card. Plaintiff was forced to jump through endless hoops presented by Bank of America by countless representatives on their 24/7 assistance line. These representatives could not inform Plaintiff when her funds were going to be available.

101. As a result of each and every violation of the UCL by Bank of America, Plaintiff is injunctive relief forcing Bank of America to stop all unlawful, fraudulent, and unfair practices.

**COUNT IV**

**NEGLIGENCE**

102. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

103. The foregoing acts and omissions Bank of America constituted numerous and multiple violations of negligence. Valid negligence claims must include: "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 [50 Cal.Rptr.2d 309, 911 P.2d 496]).

104. Plaintiff was owed a duty of reasonable care from Bank of America to ensure that: her EDD benefits were delivered in a secure manner; her issued Bank of America Debit cards was similar to other Bank of America non-EDD account holders debit card, namely cards that were equipped with EVM chop technology; Plaintiff, and EDD card holders were provided timely notice of all freezes, holder, locked, and/or

Complaint

other changes to their accounts; Bank of America would adhere to the Terms and Conditions in their contract with Plaintiff; Bank of America would adhere to Regulation E; Bank of America would safeguard Plaintiff's confidential information, and ensure that it would not be accessed by fraudsters; and Bank of America needed to provide Plaintiff adequate, reliable, and informed communication via their 24/7 telephone customer service line.

105. Bank of America breached their duty of reasonable care to Plaintiff by: repeatedly failing to deliver her benefits to Plaintiff in a secure manner, allowing fraudulent transactions to occur on her account through inadequate safety measures; issuing Plaintiff a EDD debit card with inferior security features than regular Bank of America debit card holders, namely cards with only magnetic stripes on them rather than the addition of EVM chips included; notifying Plaintiff about freezes, blocks and holds on her account; Bank of America's actions to not to adhere to their Terms and Conditions contract with Plaintiff; Bank of America's actions to not adhere to Regulation E; Bank of America's actions to allow Plaintiff's personal information to be accessed by unauthorized individuals; Bank of America's lack of 24/7 help to Plaintiff.

106. Bank of America's action to issue Plaintiff an EDD card without EMV chip technology was substandard care because Bank of America's standard care with its checking account customers is to issue debit cards with EVM technology.

107. Bank of America's untimely responses to Plaintiff claims resulted in violations of Regulation E, in addition to Bank of America's own internal Terms and Conditions.

108. Bank of America's actions, or lack of taking action to ensure Plaintiff's personal information was secure is in direct contradiction to their Terms and Conditions, and Policies and Procedures, as well as not employing industry standard EVM chip technology.

109. Bank of America's actions, or lack of taking action, foreseeably harmed Plaintiff because Bank of America is well established in the industry as a leader of EVM

chip technology implementation which they have employed on other non-EDD debit cards to ensure they were secure. By not employing this EVM technology on EDD cards Bank of America foreseeably put EDD card holders at risk. Additionally, Plaintiff and other EDD card holders alike are recipients of unemployment or other benefits to ensure that they can bridge the gap to ensure they can have their basic needs met, i.e., shelter, food, and water. Moreover, it is foreseeable that without competent and reliable customer service assistance Plaintiff and other EDD card holders would be left with zero other options and essentially be hijacked by Bank of America to wait on hold for hours daily. It is foreseeable without these benefits, which Bank of America withheld, froze, and made unavailable, Plaintiff was foreseeably harmed.

110. Bank of America's negligent actions were the direct and proximate cause of Plaintiff's inability to access her EDD funds and have her personal information by unauthorized individuals fraudulently.

## COUNT V

### BREACH OF IMPLIED DUTY TO PERFORM WITH REASONABLE CARE

111. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

112. The foregoing acts and omissions constitution numerous and multiple violations of Negligent Performance of Contract.

113. It is implied in every contract that performance will be done competently and with reasonable care. Even where Plaintiff is not a party to the contract, Plaintiff is entitled to damages for a breach of contract if the motivating purpose of the contract was for the Plaintiff to benefit from the contract.

114. Plaintiff is an intended beneficiary to the contract entered between Bank of America and the State of California. Plaintiff is under the good faith belief that the motivating purpose of the contracting parties was for the benefit of those similarly

24

situated to Plaintiff by distributing EDD benefits to California residents in need of economic support.

115. Because Plaintiff is an intended beneficiary of the contract, Bank of America owed a duty to exercise reasonable care in performing its contract. Specifically, Bank of America was obligated to implement security measures to protect Plaintiff's EDD benefits, such as distributing EDD chip cards. Bank of America was obligated to establish a customer service operation capable of handling the needs of its EDD cardholders as well as providing adequate assistance to EDD cardholders affected by fraud on their accounts. Bank of America was obligated to investigate and resolve claims relating to unauthorized transactions in a timely manner and extend provisional credit where investigation was prolonged.

116. Bank of America breached its duty owed to Plaintiff by not distributing EDD cards with EMV chips which have been established as the debit and credit card security standard around the world, effectively protecting EDD cardholder accounts. Bank of America did not establish a customer service operation capable of handling the needs of its EDD cardholders affected by fraud resulting in Plaintiff being placed on hold for hours requiring plaintiff to call back almost every day for more than a month. Bank of America failed to investigate matters relating to fraudulent, unauthorized transactions on EDD cardholders accounts demonstrated by Plaintiff being required to wait months for Bank of America to investigate the unauthorized use of Plaintiff's account. Bank of America further failed to extend provisional credit in cases where fraud claims are not timely resolved demonstrated by Plaintiff being forced to wait months with no answer as to whether funds would be disbursed to Plaintiff.

117. Bank of America's failure to secure and protect EDD cardholders' funds using EMV chip technology is inconsistent with industry standards and its own policies for non-EDD cardholders.

///

Complaint

118. Bank of America's failure to timely respond to claims of unauthorized use on EDD debit cards is inconsistent with industry regulations, such as Regulation E.

119. Bank of America was aware of the security risks posed by magnetic stripe technology, EDD cardholder account information was required to be transferred securely, and the procedures Bank of America implemented were insufficient to secure EDD cardholder accounts demonstrating that the harm Plaintiff suffered was reasonably foreseeable from Bank of America's misconduct.

120. As a direct and proximate result of Bank of America's negligent performance of contract, Plaintiff has been deprived of their EDD benefits and have failed to receive the accrued interest thereon.

## COUNT VI

### STRICT LIABILITY, DESIGN DEFECT, RISK BENEFIT TEST

121. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

122. The foregoing acts and omissions Bank of America constituted a violation design defect. Plaintiff claims that the EDD debit card design caused harm to Plaintiff. To establish this claim, Plaintiff must prove all the following: (1) that Bank of America distributed the EDD debit cards; (2) that Plaintiff was harmed; and (3) that the EDD debit card's design was a substantial factor in causing harm to Plaintiff.

123. If Plaintiff has proved these three facts, then the burden shifts to Bank of America to prove that the benefits of the EDD debit card's design outweigh the risks of the design. The following factors are to be weighed: (a) the gravity of the potential harm resulting from the use of the EDD debit card; (b) the likelihood that this harm would occur; (c) the feasibility of an alternative safer design at the time of manufacture; (d) the cost of an alternative design; and (e) the disadvantages of an alternative design.

124. Presently Plaintiff can establish that Bank of America distributed to Plaintiff a EDD debit card with only a magnetic stripe on the card, not an EVM chip.

26

125. Additionally, Plaintiff was harmed when her personal information and EDD benefits were fraudulently accessed and stolen from her Bank of America EDD debit card.

126. Moreover, Plaintiff can establish that the EDD debit card's design was a substantial factor in causing harm to Plaintiff. Bank of America has established that debit cards with EVM chips are significantly more secure than debit cards without EMV chips. Plaintiff can demonstrate that the lack of EVM chip or more specifically, the EDD debit card with only a magnetic stripe design was a substantial factor in causing Plaintiff to have her personal information and EDD benefits accessed by individuals who were not authorized.

127. Because Plaintiff has established the prior 3 facts, the burden now shifts to Bank of America to establish that that the inferior EDD debit card design's benefits outweigh the risk of harm to Plaintiff.

128. The potential cost savings to Bank of America to distribute an inferior card to Plaintiff equipped with antiquated technology is almost nonexistent in comparison to the thousands of dollars direct harm they have caused Plaintiff.

129. Bank of America's actions to distribute defectively designed EDD debit cards without EVM technology and only magnetic stripes were the direct and proximate cause of Plaintiff's inability to access her EDD funds and have her personal information by unauthorized individuals fraudulently.

130. As a result of Bank of America disturbing defective EDD debit cards Plaintiff has entitled to actual damages; consequential damages; incidental damages; and injunctive relief prohibiting Bank of America from distributing EDD debit cards with only magnetic stripes as their security measure.

131. Additionally, Plaintiff is entitled to punitive damages because Bank of America actions to distribute EDD debit cards with only magnetic strips employed on them not EVM technology was willful, malicious, oppressive, fraudulent and or reckless.

///

### COUNT VII

### NEGLIGENT FAILURE TO WARN

132. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

133. The foregoing acts and omissions by Bank of America constituted numerous and multiple violations of negligence. Plaintiff claims that the Bank of America EDD debit card lacked a sufficient warning of potential risks associated with use of Bank of America's EDD debit card.

134. Plaintiff can establish that:

(1) Bank of America distributed the EDD debit card to Plaintiff;

(2) The EDD debit card did and does have a potential risk of fraud and vulnerable to the EDD debit card users, Plaintiff, and it is an industry standard to put EVM chips on debit cards, a security measure that Bank of America employs itself on debit cards on its regular accounts;

(3) Plaintiff was presented with a situation that was highly susceptible to risks of substantial danger when the EDD card was used in its intended and foreseeable purpose because it was antiquated technology that was easily susceptible to fraud;

(4) Since Bank of America distributed the EDD debit cards with only magnetic stripes on it, which look very similar to other Bank of America debit cards with EVM chips included in them, Plaintiff would not recognize the potential risk of fraud associated with the use of antiquated debit cards;

(5) Bank of America failed to adequately warn Plaintiff of the potential risk of having an EDD debit card with only a magnetic stripe on it;

(6) Because of this failure to warn, Plaintiff suffered financial harm, and the potential future harm of having her personal information accessed fraudulently by individuals that did not have authorization;

///

(7) Bank of America's lack of sufficient warnings were a substantial factor in causing Plaintiff's harm.

135. Bank of America's failure to warn Plaintiff of the potential dangers associated with using Bank of America's EDD debit cards without EVM technology and only magnetic stripes were the direct and proximate cause of Plaintiff's inability to access her EDD funds and have her personal information by unauthorized individuals fraudulently.

136. As a result of Bank of America failure to warn Plaintiff of the potential substantial dangers of using Bank of America's EDD debit cards, Plaintiff has entitled to actual damages; consequential damages; incidental damages; and injunctive relief prohibiting Bank of America from distributing EDD debit cards with only magnetic stripes as their security measure.

137. Additionally, Plaintiff is entitled to punitive damages because Bank of America actions only to have magnetic stripes not EVM technology employed on their EDD debit cards was willful, malicious, oppressive, fraudulent and or reckless.

**COUNT VIII**

**BREACH OF CONTRACT**

138. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

139. The foregoing acts and omissions by Bank of America constituted a breach of contract with Plaintiff.

140. Plaintiff and Bank of America entered a valid contract where upon Bank of America would distribute all Plaintiff's EDD benefits to Plaintiff. Specifically Bank of America agreed to provide Plaintiff this service while adhere into the Terms and Conditions of the California Employment Development Department Debit Card Account Agreement, which had been in effect since March 1, 2018.

141. Bank of America has breached its contractual obligation to Plaintiff when Bank of America violated Section 2 of that contract when they failed to make funds available

29

for Plaintiff's use on the day [Bank of America] had been instructed by EDD to fund Plaintiff's account.

142. Bank of America has breached its contractual obligations to Plaintiff when Bank of America, again, violated Section 2 of that contract by failing to provide Plaintiff with notice required by law when Bank of America froze Plaintiff's account.

143. Bank of America has breached its contractual obligation to Plaintiff when Bank of America violated Section 9 of that contract by failing to adhere Federal Law in accordance with Regulation E Liability Disclosure, Your Liability in Case of Loss, Theft, or Unauthorized Transactions.

144. Bank of America has breached its contractual obligations to Plaintiff when Bank of America violated Section 11 of that contract when they did not provisionally credit Plaintiff's account within 10 business days of Plaintiff reporting the errors on Plaintiff's account.

145. Plaintiff has substantially performed all her duties under the contract with Bank of America. Plaintiff, reported all errors to Bank of America well within the established requirements, submitted all paperwork to verify her identity, called all given telephone numbers to contact Bank of America through appropriate channels, and continually been adherent to all policies and procedures required by Bank of America to establish Plaintiff as a responsible card holder.

146. Bank of America's actions have directly harmed Plaintiff, and Plaintiff has suffered actual damages in the amount of frozen funds, and foreseeable consequential damages that would have proximately flown from Plaintiff's timely use of those frozen and withdrawn funds.

### COUNT IX

### BREACH OF IMPLIED CONTRACT

147. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

///

Complaint

148. The foregoing acts and omissions by Bank of America constituted a breach of implied contract with Plaintiff.

149. Contract may be created by the conduct of the parties, without spoken or written words. Conduct will create a contract if the conduct of both parties is intentional and each knows, or has reason to know, that the other party will interpret the conduct as an agreement to enter a contract.

150. Bank of America provided banking services to Plaintiff. In exchange Bank of America benefitted and continues to benefit from Plaintiff because it makes money through fees associated with EDD debit cards.

151. Bank of America acknowledged these benefits and has intentionally retained them.

152. Plaintiff continually provides to Bank of America with the ability to make money through fees associated with EDD cardholder accounts.

153. By providing Bank of America that ability and Bank of America' acceptance of it, Plaintiff and Bank of America, have entered into implied contracts separate and apart from Bank of America's terms of service. Bank of America agreed to and was obligated to take reasonable steps to ensure that Bank of America prepaid EDD debit card accounts were secure against unauthorized transactions and any claims regarding unauthorized transactions were adequately investigated and resolved.

154. All parties understood that such protections and customer service obligations were integral and essential to Bank of America's business.

155. Pursuant to the implied contracts, Bank of America was obligated to provide Plaintiff with EDD prepaid debit card services that were suitable for their intended purpose of saving and accessing EDD benefits as needed. However, plaintiff rather received services that failed to take reasonable steps to safeguard their money or adequately investigate or resolve claims regarding unauthorized transactions.

156. Plaintiff fully performed their obligations and fulfilled any relevant conditions under these implied contracts, including by, among other things, seeking assistance

Complaint

from Bank of America regarding suspected unauthorized transactions on EDD accounts.

157. Bank of America's failure to fulfill its obligations to take reasonable steps to protect EDD prepaid debit card holders' funds from being appropriated through unauthorized transactions, and its failure to take reasonable steps to timely or adequately respond to claims regarding unauthorized transactions resulted in Plaintiff receiving banking services that were of less value than they provided consideration for.

158. As a result of Bank of America's conduct Plaintiff has suffered actual damages in an amount equal to the difference in the value of the banking services provided Plaintiff paid valuable consideration to receive and the banking services Plaintiff actually received.

## COUNT X

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

159. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

160. The foregoing acts and omissions by Bank of America constituted a breach of implied covenant of good faith and fair dealing with Plaintiff.

161. In every contract or agreement there is an implied promise of good faith and fair dealing. This implied promise means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another. Generally speaking, it means being faithful to one's duty or obligation. However, the implied promise of good faith and fair dealing cannot create obligation that are inconsistent with the terms of the contract.

162. Plaintiff claims that Bank of America violated the duty to act fairly and in good faith where Bank of America and Plaintiff entered the contract for Bank of America to distribute Plaintiff's EDD benefits.

Complaint

163. Plaintiff and Bank of America entered a valid contract.

164. Plaintiff did all, or substantially all the significant things that the contract required Plaintiff to do, when she notified Bank of America of all errors on Plaintiff's account. Called Bank of America numerous times to keep Bank of America updated on any changes. Adhered to all of Bank of America's demands to furnish proof of identity.

165. All conditions required for Bank of America to perform had occurred, namely, EDD had deposited funds into Plaintiff's account and Plaintiff adhered to all requests by Plaintiff to further prove Plaintiff's identity. And, that Bank of America's specific act of freezing Plaintiff's account was the direct conduct that prevented Plaintiff from receiving her benefits under the contract.

166. It was these specific actions by Bank of America, that by doing so did not act fairly and in good faith.

167. Bank America actions caused a breach of implied covenant of good faith and fair dealing which was the direct and proximate cause of Plaintiff's inability to access her EDD funds and have her personal information by unauthorized individuals fraudulently.

**COUNT XI**

**BREACH OF CONTRACT, THIRD-PARTY BENEFICIARY**

168. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

169. The foregoing acts and omissions by Bank of America constituted a breach of contract pertaining to third-party beneficiaries whereas Plaintiff is the third-party beneficiary.

170. State of California EDD and Bank of America entered a valid contract where Bank of America would distribute State of California's EDD benefits to all recipients of those benefits. This distribution was to be made from Bank of America to EDD recipients through Bank of America EDD debit cards.

Complaint

171. Plaintiff is not a party to the contract. However, Plaintiff may be entitled to damages for breach of contract if Plaintiff proves that a motivating purpose of State of California EDD was for Plaintiff to benefit from their contract.

172. It is without question that State of California EDD intended Bank of America to distribute benefits from EDD's account to recipients of these benefits, Plaintiff. The primary purpose of Bank of America's contractual duties was to create a way for Plaintiff to access her benefits owed to her from EDD.

173. Bank of America created accounts for beneficiaries of EDD's benefits and gave them EDD credit cards to access their funds in a secure, safe, and reliable manner.

174. Bank of America breached its contract with EDD because Bank of failed to provide a way for Plaintiff to access EDD benefits in a secure and reliable manner.

175. Moreover, Bank of America elected to save money and give EDD benefits recipients, Plaintiff, EDD debit cards without EVM chips employed on them, which made them susceptible to fraud.

176. Because, Bank of America has not refunded, unfrozen, and/or allowed Plaintiff to access all her EDD benefits Bank of America has breached its contract with the State of California EDD.

177. Plaintiff was harmed as a third-party beneficiary of Bank of America's breach of contract with the State of California EDD. Bank of America's breach of contract was the direct and proximate cause of Plaintiff's inability to access her EDD funds and have her personal information by unauthorized individuals fraudulently.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, prays that judgement be entered against Defendant for:

A.    For declaratory and injunctive relief prohibiting Bank of America from engaging in the misconduct described herein, including but not limited to ordering that Bank of America take each of the following corrective actions:

- Return to Plaintiff all money that was taken through fraudulent transactions

Complaint

and/or unauthorized transactions from Plaintiff's Bank of America's EDD account;

- Replace Plaintiff's EDD debit card with an EDD debit card that contains a EVM chip;
- Establish a customer service website, email address, and telephone landline that allows EDD card holders to report unauthorized transactions and request reimbursement of the same in a reasonably easy and hassle-free manner;
- Respond to EDD card holders' claims of unauthorized transactions and requests for reimbursement within a reasonable time; and
- Provide a reasonable opportunity to file claims regarding unauthorized transactions that otherwise deemed expired;

B.  For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff, including disgorgement, unjust enrichment, restitution, and all other available relief under applicable law, including but not limited to accrued interest for the periods during which Plaintiff was deprived of funds in Plaintiff's EDD account due to unauthorized transactions;

C.  For an award of punitive damages pursuant to applicable law;

D.  For reasonable attorneys' fees and expenses as permitted by California Code of Civil Procedure § 1021.5, 15 U.S.C. § 1693m(a)(3), and any other applicable statute or law;

E.  For taxable costs;

G.  For pre- and post-judgment interest as allowed by law; and

H.  For any other relief the Court deems just.

///

///

///

///

///

Complaint

## TRIAL BY JURY

178. Pursuant to the seventh amendment of the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Respectfully submitted,

**SWIGART LAW GROUP**

Date:  April 13, 2021                    By:  */s/ Joshua B. Swigart*
                                              Joshua B. Swigart, Esq.
                                              Josh@SwigartLawGroup.com

                                              Attorney for Plaintiff

Complaint